## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **vs.** | **:** | **Criminal No. 09-270-ALL** |
| | **:** | |
| **MICHAEL WRIGHT, ET AL.** | **:** | |
| | **:** | |

## M E M O R A N D U M

**STENGEL, J.**                                                    **JUNE 20, 2013**

The narrow issue in this case is whether to apply the exclusionary rule to a search conducted with an invalid warrant.[1]

### I.        Background

Michael Wright and his brother, Randall Wright, were arrested in early 2009 on various drug and firearms charges.  The Defendants filed numerous motions to continue as well as other pretrial motions.  Michael Wright filed a motion to suppress physical evidence from the January 27, 2009, search of his apartment, in which his co-defendant and brother, Randall, joined.  I held hearings on the motions on April 27, 2010, and July 12, 2010, and issued an Order and opinion shortly thereafter suppressing the evidence and denying all other pre-trial motions without prejudice.

The government timely appealed my ruling.  On August 16, 2012, the Third Circuit reversed my 2010 decision and remanded for further consideration of whether the exclusionary rule should apply in these circumstances.  The parties submitted briefs on

---

[1] This case is on remand from the United States Court of Appeals for the Third Circuit.  <u>United States v. Wright</u>, 2012 U.S. App. LEXIS 17203 (3d Cir. Pa. Aug. 16, 2012).

the issue for remand, and I conducted a hearing on the issues identified by the Third Circuit on February 13, 2013.

## II.     Facts

The Wright brothers lived a block apart from one another in Allentown and were suspected of distributing marijuana in January 2009. A confidential source working with DEA agents purchased a pound of marijuana from Randall Wright on January 13, 2009, and another ounce on January 27, 2009.

Jeffrey Taylor, an agent with the Drug Enforcement Agency, prepared an affidavit of probable cause to search the Wrights' residences on January 27, 2009.[2] The United States Attorney's Office prepared the warrant application and face sheet. On the face sheet itself, at the place where the property to be searched is described, there is only Michael Wright's address and the phrase "SEE ATTACHMENT A."[3] Additionally, on the face sheet, under the section in which the warrant should describe "a certain person or property" to be seized, there is only the phrase "SEE ATTACHED AFFIDAVIT OF PROBABLE CAUSE."[4] Attachment A and the affidavit of probable cause were attached to the warrant application provided to the Magistrate Judge.[5]

---

[2] At the April 27, 2010, suppression hearing, Taylor testified that it is normal police practice to prepare a warrant application and a "face sheet," which is the warrant itself, both of which are pre-printed forms with blanks to be filled in by the agent or officer. Transcript of Oral Argument at 25, United States of America v. Wright, et al., No. 9-270-1, 2 (argued April 27, 2010).

[3] In this case, Attachment A was a proper description of the property to be searched.

[4] Typically, this section would read "SEE ATTACHMENT B" and would include a list of items to be seized, but in this case, there was only the affidavit of probable cause. However, the affidavit of probable cause sufficiently described the items to be seized.

[5] The affidavit states:

The search warrant applications were approved and signed by United States Magistrate Judge Arnold Rapoport on January 27, 2009. Judge Rapoport also granted the government's motion to impound the search warrants, the affidavits for the search warrants, and all subsequent inventory and docket papers. The warrants were then immediately executed.[6] However, because the affidavit of probable cause was impounded, neither the warrant nor any incorporated document included a list of the items to be seized during the course of the search.

At the suppression hearing, Agent Taylor was questioned about whether he noticed that the warrants did not state "See Attachment B" or have an Attachment B. Agent Taylor testified that he did not.[7] Transcript of Oral Argument at 42, United States of America v. Wright, et al., No. 9-270-1, 2 (argued April 27, 2010). He commented that he was "in the process of obtaining a search warrant [and] doing the affidavit as well as organizing anywhere from thirty to thirty-five officers" and it was, overall, a very busy day. Id. at 33.

---

Based on the aforementioned facts, there is probable cause to believe that the fruits and instrumentalities of crimes in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 924(c), including but not limited to controlled substances, drug paraphernalia, to include packaging material; documents and items used to manufacture false identification; documents used in furtherance of drug activity, to include correspondence, drug ledgers, calendars, and telephone lists and directories; United States currency, photographs, phone numbers and phone bills, bank records, to include statements and canceled checks, and controlled substances for delivery to others, are contained at 1028 Hamilton Street, 1 Floor rear apartment, and 26 St S. Howard Street, located in Allentown, Pennsylvania.

[6] DEA agents recovered four guns, several boxes of ammunition, about $7,900 in cash, 50 pounds of marijuana, and assorted drug paraphernalia from Randall Wright's apartment. In Michael Wright's apartment, they found approximately $1,000 in cash, 43 pounds of marijuana, and assorted drug paraphernalia.

[7] "[T]o be honest with you I just didn't take notice of that, I just assumed it was there, I just assumed everything that was supposed to be there was there." Transcript of Oral Argument at 42, United States of America v. Wright, et al., No. 9-270-1, 2 (argued April 27, 2010). During that same cross examination, Agent Taylor stated that he "guessed it would be fair to say" that he did not review the documents with care. Id. at 44. This is, in fact, the most basic definition of negligence – acting without care. Taylor v. AMTRAK, 310 F. Supp. 2d 727, 731 (E.D. Pa. 2004).

Agent Taylor also testified that, as was his practice, he relied on the U.S. Attorney's Office to prepare the face sheets and that normally warrants prepared by the U.S. Attorney's Office refer to Attachment B in the appropriate place and include an Attachment B listing the items to be seized.  Id. at 35.  He stated that in his mind, he had no doubt that the warrants were valid.  Id. at 39.  Agent Taylor also confirmed that he was "intimately familiar" with the Fourth Amendment requirement that warrants state with particularity the items to be seized during a search as he had performed countless searches and prepared numerous affidavits of probable cause.  Id. at 41.

## III.    The Suppression Question

### A.  District Court's Ruling on the Motion to Suppress

In my ruling on the motion to suppress, I found that the warrants violated the Fourth Amendment's particularity requirement by failing to "describe . . . the things to be seized."  U.S. Const. Amend. IV.   I considered United States v. Leon, 468 U.S. 897 (1984), which held the exclusionary rule does not apply in all circumstances where the warrant is faulty.  Specifically, where the police officer relies on an invalid warrant and the reliance is "objectively reasonable," the evidence need not be excluded.  Leon discusses "four limited circumstances" in which a police officer's reliance on a warrant will not be considered "objectively reasonable":

> 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
> 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
> 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or

4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

See United States v. Tracey, 597 F.3d 140, 151 (3d Cir. 2010).  Because the warrant in this case was so facially deficient in failing to particularize the place to be searched or the things to be seized, the good faith exception to the exclusionary rule, as explained in Leon, did not apply.

I considered Herring v. United States, 555 U.S. 135 (2009), which introduced a new emphasis on levels of police culpability.  In Herring, the U.S. Supreme Court described the scope of the good faith exception, ultimately affirming the Eleventh Circuit's decision not to exclude evidence obtained pursuant to a recalled search warrant that was mistakenly marked in a computer database as "active."  The police were "negligent" in failing to update the data base and eliminate the "recalled" warrant.  The Court held that the exclusion of evidence was not appropriate where the police conduct "was the result of isolated negligence."[8]  Id.  Rather, the Court found that exclusion is only proper where the police conduct at issue is "deliberate, reckless, or grossly negligent" or where exclusion will deter "recurring or systemic negligence."  Id. at 700-02.

---

[8] It is important to note that commentators argue Herring's focus on police culpability represents a significant departure from Leon.  United States v. Wright, 730 F. Supp. 2d  at 373-74 (citing George M. Dery III, Good Enough for Government Work: *The Court's Dangerous Decision, in Herring v. United States, to Limit the Exclusionary Rule to Only The Most Culpable Police Behavior*, 20 Geo. Mason U. Civ. Rts. L.J. 1, 27-28 (2009); Wayne LaFave, The Smell of Herring: *A Critique of the Supreme Court's Latest Assault on the Exclusionary Rule*, 99 J. Crim. L. & Criminology 757, 765 (2009)).

Herring's objective reasonableness standard allows the use of evidence obtained if the police were no more than negligent.[9]  Wright, 730 F. Supp. 2d at 372.  Herring's attention to the state of mind of the police was somewhat controversial and raised questions about the continued validity of the exclusionary rule.  Herring did not reverse Leon or Groh v. Ramirez, 540 U.S. 551 (2004), and I attempted to reconcile Herring with those earlier "good faith" cases.[10]  See Wright, 730 F. Supp. 2d at  372.  The Sixth Circuit in United States v. Lazar, 604 F.3d 230 (6th Cir. 2009), provided a thoughtful analysis of Herring.  The Lazar court held that "[Groh], rather than its more recent, but less on point, decision in [Herring], control[ed], and require[d] suppression of all patient records seized beyond the scope of any patient lists presented to the issuing Magistrate Judge."  United States v. Lazar, 604 F.3d 230, 237-38 (6th Cir. 2009).  The court held that "Herring does not purport to alter that aspect of the exclusionary rule which applies to warrants that are facially deficient warrants *ab initio*."  Id. at 237-38.

I found that the Supreme Court in Herring did not abandon or question its holding in Leon and held that the warrant in this case was "so facially deficient" in failing to particularize the things to be seized that "the executing officers [could not] reasonably presume it to be valid."  Wright, 730 F. Supp. 2d at 375 (citing Leon, 468 U.S. at 923).

---

[9] When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted "in objectively reasonable reliance" on the subsequently invalidated search warrant.  Herring v. United States, 555 U.S. 135, 142 (2009).

[10] At the time of my 2010 decision, Herring represented a significant change in Fourth Amendment and exclusionary rule jurisprudence by taking account of the mental state of police when a search or seizure is objectively unreasonable, and holding that the mental state must exceed mere negligence.

Because the warrant was so clearly invalid, I found the exclusionary rule applied and I granted the motion to suppress.  Id.

      B. <u>Third Circuit's Decision on Appeal</u>

The Court of Appeals agreed with my analysis on two points: the warrant was invalid and the good faith exception did not apply.  The Third Circuit agreed with my conclusion that "the warrants in this case—neither of which described any items to be seized—were invalid on their face."  <u>United States v. Wright</u>, 2012 U.S. App. LEXIS 17203, at *7 (3d Cir. Aug. 16, 2012).  The court went on to say that the although "the warrants purported to incorporate by reference Agent Taylor's affidavit of probable cause," they "did not particularize the items to be seized" because "that affidavit did not actually accompany the warrants when they were executed because it was—at the government's request—impounded and filed under seal."  <u>Id.</u> at *9.  Thus, the court agreed that the warrants "lacked any description of the items to be seized[,] … the government did not properly incorporate into either warrant any document that satisfied the Fourth Amendment's particularity requirement[,] …. [and] the searches of the Wrights' apartments were essentially 'warrantless' within the meaning of the Fourth Amendment."  <u>Id.</u>

The Third Circuit also agreed with my analysis that in certain circumstances—and in this case—the good faith doctrine does not apply to a Fourth Amendment violation. Evidence is admissible under the good faith exception to the exclusionary rule "if an officer obtains a warrant and executes it in good faith."  <u>United States v. Stearn</u>, 597 F.3d

540, 561 (3d Cir. 2010) (quoting <u>Leon</u>, 468 U.S. at 921). The Third Circuit explained the

separate analyses of good faith and the exclusionary rule:

> the good-faith exception is a judicially created exception to the exclusionary rule, <u>Davis</u>, 131 S. Ct. at 2434, although qualifying for the good faith exception may result in admitting evidence, not qualifying for it does not mean that the evidence will be suppressed. Hence, the commonsense acknowledgement that the good faith exception may prove unavailable in a certain set of cases in no way relieves a court of its responsibility to undertake a culpability analysis before applying the exclusionary rule.

<u>Wright</u>, 2012 U.S. App. LEXIS 17203, at *19. Specifically, the good faith exception will

rarely be available in cases in which "the warrant [is] so facially deficient that it fail[s] to

particularize the place to be searched or the things to be seized." <u>Virgin Islands v. John</u>,

654 F.3d 412, 418, 55 V.I. 1324 (3d Cir. 2011) (quoting <u>Tracey</u>, 597 F.3d at 151).

Finally, although the Court of Appeals found that my decision to suppress the

evidence may have been correct, my analysis of the officer's culpability was not

sufficient to explain the result. The Court of Appeals remanded the case for a factual

analysis of Agent Taylor's culpability and a decision whether, based on a further

consideration of the circumstances, the exclusionary rule should apply. Specifically, the

Third Circuit has rejected the application of the exclusionary rule to bar evidence seized

with a bad warrant without more. The "more" is a further consideration of circumstances

justifying the application of the exclusionary rule following a clear and undisputed

finding that the warrant was faulty as a matter of law.

## IV. The Exclusionary Rule as a Remedy

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The exclusionary rule—suppressing evidence obtained in violation of the Fourth Amendment—is a prudential doctrine created by the Supreme Court to "compel respect for the constitutional guaranty." Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 363 (1998); Elkins v. United States, 364 U.S. 206, 217 (1960); see also Weeks v. United States, 232 U.S. 383 (1914); Mapp v. Ohio, 367 U.S. 643 (1961). The exclusionary rule has traditionally applied as a remedy when the gathering of evidence runs afoul of the Fourth Amendment. Simply put, where evidence has been obtained in violation of a person's constitutional rights, the prosecutors may not use the evidence.

This is not a rule of strict liability. The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies. Illinois v. Gates, 462 U.S. 213, 223 (1983). Currently, there is a 5-4 majority in the U.S. Supreme Court holding that unconstitutional police activity is excused from application of the exclusionary rule in cases of mere law enforcement negligence. Herring, 55 U.S. 135. This focus on police conduct goes beyond the good faith exception and involves a separate analysis.[11]

---

[11] The "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." Leon, 468 U.S. at 922, n 23. For example, when police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted "in objectively reasonable reliance" on the subsequently invalidated search warrant. Id, at 922.

The exclusionary rule's sole purpose is to deter future Fourth Amendment violations. See Herring, 555 U.S. at 141; Leon, 468 U.S. at 909, 921, n. 22. Where suppression fails to yield "appreciable deterrence," exclusion is "unwarranted." United States v. Janis, 428 U.S. 433, 454 (1976). A court must also account for the "substantial social costs" generated by the rule. Hudson v. Michigan, 547 U.S. 586, 596 (2006); Leon, 468 U.S. at 907. For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs. See Herring, 555 U.S. at 141; Leon, 468 U.S. at 910.

So how is a trial court to determine when suppression is warranted? The focus, clearly, should be on the conduct of the police. Leon and the cases following state that the deterrent benefits of exclusion "var[y] with the culpability of the law enforcement conduct" at issue. Herring, 555 U.S. at 143. For example, when the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. Id. at 144. Alternatively, when the police conduct involves only simple negligence, any benefit of exclusion will not outweigh its costs.[12] See Leon, 468 U.S. at 919, 908, n. 6; United States v. Peltier, 422 U.S. 531, 539 (1975).

In United States v. Rosa, 626 F.3d 56 (2d Cir. 2010), an investigator's affidavit explained that the police wished to search for evidence of child exploitation, but the

---

[12] The Supreme Court applied the holding in Arizona v. Evans, 514 U.S. 1, 13-14 (1995), where the Court applied the good-faith exception in a case where the police reasonably relied on erroneous information concerning an arrest warrant in a database maintained by judicial employees, to the Herring case and extended its reasoning to conclude that "isolated," "nonrecurring" police negligence lacked the culpability required to justify the harsh sanction of exclusion. 555 U.S. at 137.

warrant authorized the search of all "computer equipment" and storage media "which would tend to identify criminal conduct." Id. at 58. There were more specific limitations in the affidavit, which was not incorporated in the warrant. The Second Circuit, applying Groh v. Ramirez, 540 U.S. 551 (2004), held that the warrant was invalid, concluding "that the warrant failed to describe with particularity the evidence sought and, more specifically, to link that evidence to the criminal activity supported by probable cause." Rosa, 626 F.3d at 62. Thus, it violated the Fourth Amendment.[13]

However, the court held that the exclusionary rule was inapplicable, given that the affiant asked for limited authority to search and supervised the search consistent with that limitation. The court acknowledged Leon and Groh's application of the exclusionary rule, but explained that its applicability "requires the additional determination that the officers' conduct was 'sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system.'" Rosa, 626 F.3d at 66. The Second Circuit found there was no deliberate conduct because the officers did not actually rely on the defective warrant.

In United States v. Franz, 2012 U.S. Dist. LEXIS 149882 (E.D. Pa. Oct. 18, 2012), when executing the warrant, the agent refused to provide the defendant with a copy of the sealed attachments along with the warrant. At the suppression hearing, the agent testified that the warrant was the first warrant that he had ever prepared or executed. The decision

---

[13] Unincorporated, unattached supporting documents cannot cure an otherwise defective search warrant. Groh, 540 U.S. at 557.

about which warrant documents the government would seek to seal was made by the Offices of the U.S. Attorneys in Pennsylvania and Alaska, in conjunction with the agent.

Though he refused to give the defendant the sealed supporting documents, the agent explained to the defendant the subject matter and circumstances that gave rise to the warrant, including the allegations that the defendant removed a mammoth tusk from protected lands. At various points during the search, the agent also described to the defendant the items that the warrant authorized him to take.

The court found it was clear from the agent's behavior that he had no intention of concealing the subject matter of the warrant or the information on Attachment B, which weighed against applying the exclusionary rule. See United States v. Tracey, 597 F.3d 140, 145 (3d Cir. 2010) (considering the fact that "during the search, [the officers] explained the search warrant" to the defendant and his wife in its ultimate decision not to apply the exclusionary rule). The district court also noted that the defendant presented no evidence that the agent's refusal to provide the defendant with the warrant attachment was "recurring or systemic," thereby also supporting the view that suppression would serve no deterrent purpose. Franz, 2012 U.S. Dist. LEXIS 149882, at *20.

In my analysis of the original suppression motion, after a hearing, I specifically considered the agent's level of culpability. It was clear to me then, and clear to me now, that the agent's level of culpability was low. In fact, Agent Taylor did everything he was required to do. His investigation developed the probable cause supporting the warrant and he used a confidential informant to make a controlled purchase of a controlled substance from the defendants. He presented his affidavit to a Magistrate Judge who

quite properly found there to be probable cause. Agent Taylor's only omission was his failure to include the affidavit (describing the premises to be searched and the items to be seized) with the warrant at the time of the search. The omission was really a misstep by the U.S. Attorney's office in putting the paperwork together. The warrant was invalid because of a simple mistake.

At oral argument on February 13, 2013, the government emphasized that Agent Taylor prepared an affidavit identifying the place to be searched and the property to be seized.[14] He relied on the prosecutor's office to insert the information on the correct forms and did not notice the attachment had been omitted. His error was the result of his being occupied with an ongoing investigation and arranging the simultaneous search of two locations. The Magistrate Judge approved the warrant, which had the attachments with the correct information regarding the items to be seized. Agent Taylor executed his searches within the scope of the affidavit he presented to Magistrate Judge Rapoport. Transcript of Oral Argument at 30, United States of America v. Wright, et al., No. 9-270-1, 2 (argued February 13, 2013). Therefore, the government contends, Agent Taylor was at most negligent and the true negligent act was an omission by the U.S. Attorney's Office.

The government went on to argue that Agent Taylor consulted with and relied on the prosecutor. The mistake resulted entirely from an error by the prosecutor's office, not

---

[14] No new factual evidence was presented at oral argument on February 13, 2013. Transcript of Oral Argument at 4, United States of America v. Wright, et al., No. 9-270-1, 2 (argued February 13, 2013). Counsel agreed that the evidence presented at the initial suppression hearing provided a sufficient factual basis to assess the exclusionary rule question.

Agent Taylor.[15]  There is no evidence that this is a recurring problem of either agents or prosecutors in the U.S. Attorney's Office in the Eastern District of Pennsylvania neglecting to attach the list of items to be seized to warrants.[16]  Finally, the government argued that the error of sealing lists of items to be seized had no actual impact on the Defendants' rights.  The mistake had no effect on the judge's approval of the search warrants or the execution of the warrants.[17]

Not surprisingly, Defendants see a much higher level of culpability by the agent and the prosecutors.  Defendants contend that Agent Taylor's rush to "to orchestrate everything" did not excuse his affirmative duty to review the warrant before presenting it to the Magistrate Judge and executing it.  Defendants argue that Agent Taylor was "grossly negligent" in failing to review, at any time, the one-page search warrant to ensure that it included, on its face or in an attachment, a particular description of the things to be seized from the apartment.  According to the defense, this mind-set and practice cannot possibly constitute "mere negligence" especially given the magnitude of the error in this case: a textual violation of the Fourth Amendment.

---

[15] At the April 27, 2010 hearing, Agent Taylor testified that there would be no reason that he would intentionally, recklessly, or deliberately fail to list the items he was searching for in the case.  Additionally, the government argued that this incident "is the only time … that this mistake ever happened."  Transcript of Oral Argument at 40, United States of America v. Wright, et al., No. 9-270-1, 2 (argued February 13, 2013).

[16] Taylor was routinely compliant with the requirement of service of a particular list of items to be seized, and on numerous occasions relied without incident on the U.S. Attorney's Office to provide it.

[17] The government argues that there is no need to evaluate the potential deterrent effect because the officer's conduct was merely negligent and, thus, the cost of suppression would far outweigh the any benefit of deterrence.  The government argued, "The cost is that this criminal case comes to an absolute end and two gentlemen who are accused of serious criminal conduct involving illegal drugs and illegal guns would be freed."  Transcript of Oral Argument at 33, United States of America v. Wright, et al., No. 9-270-1, 2 (argued February 13, 2013).

The Defendants maintain that Agent Taylor had conducted countless warrants prior to this one and that he knew the difference between a sealed and an unsealed warrant. In fact, Agent Taylor specifically stated that he did not review the documents with care before he presented them to the Magistrate Judge. The warrant was not presented to a supervisor for review, presumably because it was completed by the U.S. Attorney's Office. Thus, Defendants contend that Agent Taylor acted "recklessly" when he disregarded a known requirement that the search warrant describe the items to be seized, or at least was grossly negligent when he failed to competently review the warrant. Transcript of Oral Argument at 19, <u>United States of America v. Wright, et al.</u>, No. 9-270-1, 2 (argued February 13, 2013).

Defendants argue Taylor's "culpability" is not measured by his intention or the injury to Defendants, but against the "injury" to the Fourth Amendment. Specifically, the agent's "culpability is … a function of the level of care that we expect from him under the circumstances…. [Agent Taylor] was the one who was responsible ultimately for the preparation and the execution of the warrant." <u>Id.</u> Therefore, according to Defendants, the seemingly non-existent impact on the Defendants' rights is irrelevant. Simply because Agent Taylor performed some of his duties as the affiant does not excuse his failure to ensure what Defendants argue is his most important duty: executing a facially valid warrant. Defense counsel argued that Agent Taylor's failure "to look at the warrant after he received it from the U.S. Attorney's office … to ensure that the warrant, one, was facially valid and, two, had the proper Attachment B which particularized the things to be seized" was grossly negligent. <u>Id.</u> at 20.

Defendants claim that failure to suppress the evidence in this case will provide little incentive for future affiants to review the warrant in advance to ensure that it has been correctly prepared and complies with the Fourth Amendment. Id. at 14. Moreover, an affiant could simply claim that he relied on a third-party to do the job right or had other duties to perform. Specifically, counsel argued that the "mistake was done within law enforcement, so the deterrent benefits are … checking the very basics." Id. at 18. They argue that this will "open the door to slipshod work" on the part of future affiants. Id. at 15-16, 18. On the other hand, suppression will ensure that responsible law-enforcement officers will take care to learn "what is required of them" under Fourth Amendment precedent and will conform their conduct to these rules. Hudson, 547 U.S., at 599.

These arguments have some superficial appeal, but no real connection to what actually happened in the case. In fact, Agent Taylor did prepare an application for a warrant based on probable cause and he did present the application, complete with a description of the location to be searched and the items to be seized, to a judicial officer, Judge Rapoport, who found there to be probable cause based upon a complete application and signed the warrant. Agent Taylor was aware of what was required for a valid warrant and he conformed his conduct to those requirements. The argument that he was "reckless" or "grossly negligent" is hyperbole, untethered to any reasonable version of the facts of this case.

There is no disagreement in this case as to the standard of care or the definitions of the standard of care. Both parties agree that negligence is the failure "to measure up to

the conduct of a reasonable person." It is the "absence of care." Transcript of Oral

Argument at 35, <u>United States of America v. Wright, et al.</u>, No. 9-270-1, 2 (argued

February 13, 2013). <u>See also</u> <u>Judd v. New York & T. S. S. Co.</u>, 117 F. 206, 209 (3d Cir.

1902) (Negligence is the absence of care); <u>Meadows v. Anchor Longwall & Rebuild,</u>

<u>Inc.</u>, 2006 U.S. Dist. LEXIS 21617, *23-24 (W.D. Pa. 2006) ("Negligence is defined as

the absence of care under the circumstances."); <u>see also</u> <u>Taylor v. AMTRAK</u>, 310 F.

Supp. 2d 727, 731 (E.D. Pa. 2004) ("negligence is defined as the absence of ordinary care

that a reasonably prudent person would exercise in the same or similar circumstances").

The distinction between mere negligence and gross negligence turns on issues of

fact. <u>Fialkowski v. Greenwich Home for Children, Inc.</u>, 921 F.2d 459, 462-63 (3d Cir.

1990). The generally accepted meaning of "gross negligence" is,

> a greater want of care than is implied by ordinary negligence, … which in
> turn means 'no more than a failure to measure up to the conduct of a
> reasonable person.' Gross negligence has also been described as 'the want
> of even scant care' and the 'failure to exercise even that care which a
> careless person would use.'

<u>Id.</u> at 462. A person acts with criminal negligence, sometimes referred to as gross

negligence,

> when the person should have been aware of a substantial and unjustifiable
> risk that the material element exists or will result from his conduct. The
> risk must be of such a degree or nature that the actor's failure to perceive it,
> involves a gross deviation from the standard of care that a reasonable
> person would observe in the actor's situation.

<u>United States v. Maury</u>, 695 F.3d at 227, 257 (3d Cir. 2012). In other words, gross

negligence is the "absence of care that even a careless person would exercise."

Transcript of Oral Argument at 36, <u>United States of America v. Wright, et al.</u>, No. 9-270-1, 2 (argued February 13, 2013).  <u>See also</u> <u>DeJesus v. VA</u>, 479 F.3d 271 (3d Cir. 2007).

Finally, "recklessness" involves some level of knowledge.  There are two distinct ways in which conduct can be reckless in this context: either the affiant actually entertained serious doubts or obvious reasons existed for him to do so, such that the finder of fact can infer a subjectively reckless state of mind.  Transcript of Oral Argument at 45, <u>United States of America v. Wright, et al.</u>, No. 9-270-1, 2 (argued February 13, 2013).  <u>See also</u> <u>United States v. Brown</u>, 631 F.3d 638 (3d Cir. 2011); <u>Reedy v. Evanson</u>, 615 F.3d 197, 213 (3d Cir. 2010) (stating that a statement is made with "reckless disregard" when, "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported").

In <u>Groh</u>, the Court identified the purposes of the particularity requirement: (1) to assure that a neutral and detached magistrate defines the parameters of the search, (2) to guide the officers in their execution of the search, and (3) to "'assure[] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search.'"  <u>Id.</u> at 561 (quoting <u>United States v. Chadwick</u>, 433 U.S. 1, 9 (1977)).

In this case, the affidavit, with its specific list of items to seize, was incorporated in the warrant and was reviewed and approved by the Magistrate Judge.  The record indicates that the affiant oversaw the searches and assured that the officers acted in accordance with the warrant's limits.  There is no evidence or even any suggestion that he

did otherwise. Although the injury to the Fourth Amendment resulted in a warrantless search, much like <u>Franz</u>, there is no indication that the officer had any intention of concealing the subject matter or the information concerning the items to be seized. This factor weighs against applying the exclusionary rule. Although Agent Taylor had more experience executing warrants than the agent in <u>Franz</u>, there is no evidence that Agent Taylor had different intentions.

The facts of this case are also similar to those in <u>Rosa</u>, the Second Circuit decision, which found that the exclusionary rule was inapplicable. Although the warrant in this case violated the Fourth Amendment, the officer's conduct was merely negligent because he did not rely on the defective warrant but instead directed his search based on the sealed affidavit containing the specific list of the items to be seized. There is evidence in this case that Agent Taylor not only conducted the search based on the affidavit but also instructed all of the participating officers about the limited scope of the items to be seized.

Further, it was the prosecutor's office, not Agent Taylor, which failed to include an attachment to the warrant containing the required information. Agent Taylor testified that the prosecutor typically prepares an "Attachment B," which is included with the warrant. Although sealing the affidavit may have been a deliberate act, the consequence of that, i.e., a defective warrant, was clearly unintended. The government did not gain anything from sealing parts of the warrant—the search was directed within the scope of the warrant approved by Judge Rapoport.

Defendants focus their argument on the fact that Agent Taylor was somehow "more than negligent" in his failure to examine the warrant before executing it. Agent Taylor specifically stated that he did not review the documents with care before he executed them. This is, at most, negligence. Thus, Defendants' argument that Agent Taylor somehow knew of the risk that the warrant was defective or acted with less care than even a careless person would use is not persuasive under these facts. I find the warrant's lack of particularity at the time of execution was a result of mere negligence. The error occurred in the U.S. Attorney's Office and led to a warrant that was incomplete when it was served. It is important to remember that the warrant was complete at the time it was approved by Judge Rapoport.

Because the Agent did not act with grossly negligent, deliberate, or reckless disregard for Fourth Amendment rights, I find that suppression would not deter future Fourth Amendment violations. I conclude that the costs of suppression outweigh the benefit because it is nearly impossible to deter isolated incidents of negligence such as this. When I granted the motion to suppress earlier in the case, I specifically found the level of culpability of the Agent to be "low." Upon re-examination of the facts of this case as developed at the suppression hearing, and after careful consideration of the arguments of counsel, I find no reason to change the conclusion. After careful consideration of the discussion of this case by the Court of Appeals for the Third Circuit and in light of all the circumstances, I find there to be no sufficient basis upon which to exclude the evidence seized.

**V.     Conclusion**

The conduct of the law enforcement officer in this case does not support an application of the exclusionary rule and the motion to suppress will be denied.